UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
LIOR AVNI, real party in interest,
by his father, also known as LIOR
J. AVNI, DOV K. AVNI, also acting
here individually pro se, also known
as DOV AVNI, also known as DOV AVNI
KAMINETZLY,

                Plaintiffs,

    -against-             MEMORANDUM AND ORDER
                                  05-CV-5346(JS)(ETB)

PILGRIM PSYCHIATRIC CENTER, CHARLES
A. GIGLIO, ALAN WEINSTOCK, LAURIE
GATTO, AMY RESNICK-KLEIN, INDERJIT
SINGH, SURESH SARWAL, PAMELA
WEINBERG, JOHN TAURIELLO, MICHAEL
DUFRESNE, LEWIS CAMPBELL, HOWARD
KIRSCHEN, RICHARD MIRAGLIA, and BOB
KALANI,

                Defendants.
----------------------------------X
APPEARANCES:
For Plaintiffs:        Lior Avni and Dov Avni, pro se
                       150-B Forest Drive
                       Jericho, New York 11753

For Defendant Howard
Kirschen:              Brian E. Lee, Esq.
                       Ivone, Devine & Jensen
                       2001 Marcus Avenue
                       Lake Success, New York 11042

For remaining
Defendants:            Valerie Singleton, Esq.
                       New York State Attorney General
                       200 Old Country Road, Suite 460
                       Mineola, New York 11501

SEYBERT, District Judge:

**INTRODUCTION**

       Pending before the Court are two motions to dismiss the Complaint. Defendant Howard Kirschen, M.D. ("Dr. Kirschen") brings

one motion, and the remaining Defendants bring the other. Both argue that this Court cannot exercise jurisdiction over Plaintiffs' Complaint. For the reasons below, the Court agrees with Defendants and GRANTS Defendants' motions to dismiss.

## **BACKGROUND**

The facts of this case are taken from Plaintiff's Complaint ("Compl."). For the purpose of this motion, the Court presumes these facts to be true. In 1996, Plaintiff Lior Avni ("Lior") was diagnosed with Crohn's disease and later became depressed. To combat the depression, Lior began using Zoloft, an anti-depressant. (Compl. ¶ 18.) A year later, Lior's depression worsened, and Dr. Marie Boyanorsky, Ph. D., recommended that Lior be treated further at the HIP-Woodbury Center. (Compl. ¶ 21.)

While at the HIP-Woodbury Center, Lior underwent a number of tests, including blood work. Plaintiffs allege that no traces of prohibited substances existed in Lior's blood, but the Defendants and other experts "fabricated fraudulent . . . reports." (Compl. ¶ 22.) In 1998, Lior decompensated and suffered from a "delusion that his Chinese neighbor was an assassin and shot at his empty car." (Compl. ¶ 25.) The Nassau County police arrested Lior, and Lior underwent more tests, including psychiatric exams and blood work. (Compl. ¶ 26.)

Lior was indicted for shooting a rifle at his neighbor's car and held in the psychiatric jail ward at Nassau County Medical

Center. (Compl. ¶ 27.) Lior continued to be treated as an outpatient by Dr. Kirschen. (Compl. ¶ 28.) When Lior's attorney requested Lior's psychiatric records from Dr. Kirschen, Dr. Kirschen and HIP allegedly "knowingly and maliciously" withheld certain medical information. (Compl. ¶ 30.) Plaintiffs allege that Dr. Kirschen's and HIP's failure to properly treat Lior left Lior's attorney with no choice but to plea bargain. (Compl. ¶ 31.)

On February 21, 1998, Judge Galasso of Nassau County approved the plea bargain and ordered two New York state appointed psychiatrists, Michael Crosser ("Crosser") and Defendant, Inderjit Singh, M.D. ("Dr. Singh") to examine Lior. (Compl. ¶ 32.) Crosser and Dr. Singh examined Lior and allegedly did not find him dangerous or suffering from a mental illness. (Compl. ¶ 33.) On May 24, 1999, Judge Galasso conducted an oral hearing, adopted the findings of Dr. Singh and Crosser, and decided that Lior would be treated as an outpatient and reside at home. (Compl. ¶ 34.)

In June 1999, Judge Galasso ordered the State's Office of Mental Health ("OMH") to monitor Lior's treatment and psychiatric status at Defendant Pilgrim Psychiatric Center ("PPC"). (Compl. ¶ 36.) OMC and PPC allegedly "negligently and recklessly" ignored their duties, which Plaintiffs did not discover until August 2004 when they received all of PPC's records. (Compl. ¶ 37.) From 1999 until 2002, PMH and PPC allegedly did not prepare a psychiatric treatment plan nor monitor Lior as ordered by Judge Galasso.

(Compl. ¶ 38.)

PPC eventually evaluated Lior in April and May 2002 and allegedly found Lior fit to be an outpatient. Such records were allegedly concealed, however, and in May 2002, Drs. Kirschen and Singh allegedly conspired to seize Lior when he was visiting for a routine outpatient checkup. Lior was transported to Nassau University Medical Center and ultimately transferred to PPC, where he was involuntarily retained.

To justify involuntarily retaining Lior at PPC, PPC staff, who are also Defendants in this action, backdated psychiatric reports of Lior, under-medicated and destabilized Lior, and concealed positive evaluations of Lior. (Compl. ¶¶ 43-44.) The Defendants allegedly conspired to create false and backdated reports regarding Lior, which basically depicted Lior as a dangerous, totally unstable, and mentally ill patient. (Compl. ¶ 41.) Based on such records, Justice Floyd ordered the involuntary retention of Lior at the PPC in August 2002, and Justice Tanenbaum extended the involuntary retention order. (Compl. ¶¶ 40, 42.)

Based on the Defendants' alleged conspiracy, fraud, and malpractice that formed the basis for the judges' orders that ultimately confined Lior at PPC, the Plaintiffs brought three lawsuits in state court. In all three state court actions, Plaintiffs brought claims similar to the claims in this action. (Exs. A, E to Devine Aff; Ex. A to Singleton Decl.) The state

4

court judges dismissed two of the cases, with one case specifically finding that Lior's restraint was not a result of conspiracy, fraud, medical malpractice or irregularities of any kind. (Exs. C, G to Devine Aff.) Plaintiffs' third case is still pending in the New York State Court of Claims. (Ex. A to Singleton Decl.)

## STANDARD OF REVIEW

A district court should not grant a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure "unless it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts which would entitle him to relief." Sec. Investor Prot. Corp. v. BDO Seidman, 222 F.3d 63, 69 (2d Cir. 2000) (quoting Jaghory v. N.Y. State Dep't of Educ., 131 F.3d 326, 329 (2d Cir. 1997)). When applying this standard, a district court must "read the facts alleged in the complaint in the light most favorable" to the Plaintiff, as well as accept these factual allegations as true. H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 249-50, 109 S. Ct. 2893, 106 L. Ed. 2d 195 (1989). Moreover, the court's task "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Cooper v. Parsky, 140 F.3d 433, 440 (2d Cir. 1998) (quoting Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984)).

In applying this standard, a district court must "read the facts alleged in the complaint in the light most favorable" to the plaintiff and accept these factual allegations as true. H.J. Inc., 492 U.S. at 249; see also Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 165, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993) (noting the Federal Rules' liberal system of notice pleading). The appropriate inquiry, therefore, is not whether a plaintiff's claims are ultimately meritorious, but whether the plaintiff is entitled to offer evidence to support them. See Ricciuti v. N.Y. City Transit Auth., 941 F.2d 119, 123-24 (2d Cir. 1991) (stating plaintiff is not compelled to prove his or her case at the pleading stage).

Additionally, a plaintiff is not required to set out in detail the facts upon which he or she bases a claim. Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). A plaintiff need only give a statement of his or her claim that will give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." Id. Therefore, where a complaint is filed that charges each element necessary to recover, the dismissal of the case for failure to set out evidential facts can seldom be warranted. See United States v. Employment Plasterers' Ass'n, 347 U.S. 186, 189, 74 S. Ct. 452, 98 L. Ed. 618 (1954).

Pro se plaintiffs, like the Plaintiff in this action, are entitled to a more liberal pleading standard. However, a pro se

plaintiff must still comport with the procedural and substantive rules of law. See Colo. Capital v. Owens, 2005 U.S. Dist. LEXIS 5219, at *9 (E.D.N.Y. Mar. 16, 2005). Ordinarily, a pro se plaintiff is entitled to amend his complaint at least once before dismissal so long as a liberal reading of the complaint suggests that it might state a valid claim. See Thompson v. Carter, 284 F.3d 411, 419 (2d Cir. 2002).

This is especially true in pro se complaints that allege civil rights violations. See Weixel v. Bd. of Educ. of N.Y., 287 F.3d 138, 145-46 (2d Cir. 2002). A district court must "construe the complaint broadly and interpret it to raise the strongest arguments that it suggests." Id. at 146 (internal quotation marks and citations omitted). In certain instances, however, when it is "beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief," even a pro se plaintiff's complaint may be dismissed with prejudice. Platsky v. CIA, 953 F.2d 26, 28 (2d Cir. 1991). Although this Court must leniently review a pro se complaint, "bald assertions and conclusions of law will not suffice to defeat a motion for dismissal." Sleigh v. Charlex, Inc., 2004 U.S. Dist. LEXIS 19118, at *6 (S.D.N.Y. Sept. 14, 2004) (quoting Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996)) (internal quotation marks omitted).

When defendants move to dismiss for lack of subject matter jurisdiction, the Court applies the same legal standard of

plaintiff must still comport with the procedural and substantive rules of law. See Colo. Capital v. Owens, 2005 U.S. Dist. LEXIS 5219, at *9 (E.D.N.Y. Mar. 16, 2005). Ordinarily, a pro se plaintiff is entitled to amend his complaint at least once before dismissal so long as a liberal reading of the complaint suggests that it might state a valid claim. See Thompson v. Carter, 284 F.3d 411, 419 (2d Cir. 2002).

This is especially true in pro se complaints that allege civil rights violations. See Weixel v. Bd. of Educ. of N.Y., 287 F.3d 138, 145-46 (2d Cir. 2002). A district court must "construe the complaint broadly and interpret it to raise the strongest arguments that it suggests." Id. at 146 (internal quotation marks and citations omitted). In certain instances, however, when it is "beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief," even a pro se plaintiff's complaint may be dismissed with prejudice. Platsky v. CIA, 953 F.2d 26, 28 (2d Cir. 1991). Although this Court must leniently review a pro se complaint, "bald assertions and conclusions of law will not suffice to defeat a motion for dismissal." Sleigh v. Charlex, Inc., 2004 U.S. Dist. LEXIS 19118, at *6 (S.D.N.Y. Sept. 14, 2004) (quoting Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996)) (internal quotation marks omitted).

When defendants move to dismiss for lack of subject matter jurisdiction, the Court applies the same legal standard of

review used for 12(b)(6) motions. See Sweet v. Sheahan, 235 F.3d 80, 83 (2d Cir. 2000). A court lacks subject matter jurisdiction over a case when the court "lacks the statutory or Constitutional power to adjudicate it." Luckett v. Bure, 290 F.3d 493, 496 (2d Cir. 2002) (internal quotations and citation omitted). When a court faces the issue of subject matter jurisdiction, a court may "refer to evidence outside the pleadings and the plaintiff . . . has the burden of proving by a preponderance of the evidence that [subject matter jurisdiction] exists. Id. at 496-97. The Court reviews the motions to dismiss under the above-stated standards.

## DISCUSSION

I. The Eleventh Amendment Shields The State Defendants From This Action.

Defendants argue that they are entitled to immunity pursuant to the Eleventh Amendment. Generally, when a state is a named defendant, the Eleventh Amendment protects it from suit. CSX Transp., Inc. v. N.Y. State Office of Real Prop. Servs., 306 F.3d 87, 94-95 (2d Cir. 2002); Dube v. State Univ. of N.Y., 900 F.2d 587, 594-95 (2d Cir. 1990). "For over a century now, [the Supreme Court has] made clear that the Constitution does not provide for federal jurisdiction over suits against non-consenting states." Nevada Dep't of Human Res. v. Hibbs, 538 U.S. 721, 726, 123 S. Ct. 1972, 155 L. Ed. 2d 953 (2003)(citations omitted).

This rule applies to suits from citizens of the state as well as non-citizens of the state. U.S. CONST. AMEND. XI; CSX, 306

F.3d at 94. Eleventh Amendment immunity also extends to state officials "unless they are alleged to be acting contrary to federal law or against the authority of state law." Cory v. White, 457 U.S. 85, 90, 102 S. Ct. 2325, 72 L. Ed. 2d 694 (1982); see Ex Parte Young, 209 U.S. 123, 160-61, 28 S. Ct. 441, 52 L. Ed. 714 (1908) (holding that Eleventh Amendment immunity does not apply to state officials who violate the Constitution). Eleventh Amendment immunity also shields arms of the state, like a state agency. See Mancuso v. N.Y. State Thruway Auth., 86 F.3d 289, 292 (2d Cir. 1996).

This immunity, however, is not absolute; the state can waive this immunity or Congress can abrogate state immunity under Section 5 of the Fourteenth Amendment. See Seminole Tribe v. Fla., 517 U.S. 44, 55, 116 S. Ct. 1114, 134 L. Ed. 2d 252 (1996); CSX, 306 F.3d at 87. Congress abrogates state immunity when it "unequivocally expresses its intent to abrogate the immunity," and it acts "pursuant to a valid exercise of power." Seminole Tribe, 517 U.S. at 55. Congress did not expressly override the states' immunity when enacting 42 U.S.C. § 1983. See Quern v. Jordan, 440 U.S. 332, 345, 99 S. Ct. 1139, 59 L. Ed. 2d 358 (1979); Santiago v. N.Y. State Dep't of Corr. Servs., 945 F.2d 25, 31 (2d Cir. 1991), cert. denied, 502 U.S. 1094, 112 S. Ct. 1168, 117 L. Ed. 2d 414 (1992).

The Court finds that Eleventh Amendment immunity shields

the Defendants from Plaintiffs' 1983 claims. The OMH, as a state agency, is immune from suit under section 1983. See Greenwood v. New York, 939 F. Supp. 1060, vacated in part on other grounds, 163 F.3d 119 (2d Cir. 1998) (finding that OMH and its psychiatric facility are immune from suit under the Eleventh Amendment). The Eleventh Amendment also bars claims against assistant attorney generals. See Shell v. Brzezniak, 365 F. Supp. 2d 362, 374 (W.D.N.Y. 2005) (citing Petreykov v. Vacco, 159 F.3d 1347 (2d Cir. 1998) (affirming a dismissal of claims against attorney general on eleventh immunity grounds). Accordingly, the Court dismisses with prejudice Plaintiffs' section 1983 claims against PPC and - in their official capacities - the individual Defendants who work for PPC and the New York State Attorney General.

II. The Rooker-Feldman Doctrine Prohibits This Court From Presiding Over This Action.

Defendants also argue that this case should be dismissed because the Rooker-Feldman doctrine warrants such dismissal. The Court agrees. The Rooker-Feldman doctrine, named after two Supreme Court cases decided in 1923 and 1983, precludes federal district court appellate review of state court determinations. See Dist. Court of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923).

The Supreme Court recently clarified when one invokes the doctrine. See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,

544 U.S. 280, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005). "The Rooker-Feldman doctrine . . . is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Id. at 284. The Rooker-Feldman doctrine, however, may only be used against a federal litigant that was a party to the state court proceeding. See Johnson v. De Grandy, 512 U.S. 997, 1006, 114 S. Ct. 2647, 129 L. Ed. 2d 775 (1994) ("[T]he invocation of Rooker/Feldman is . . . inapt here, for . . . the [plaintiff] was not a party in the state court [action]. [Plaintiff] was in no position to ask this Court to review the state court's judgment and has not directly attacked it in this proceeding.").

In this case, Plaintiffs have brought similar claims in state court against most of the same Defendants as in this federal action. In November 2004, the Plaintiffs, along with Dov Avni's wife, Tamar Avni ("Tamar"), commenced an action in state court, alleging conspiracy, fraud, and "tortious denial of [Lior's] due process of law and liberty right[s]." (Ex. A to Devine Aff.). In March 2005, the case was dismissed. (Ex. C to Devine Aff.)

In May 2005, Tamar and Lior commenced another action in state court, alleging the same claims based on the same facts as in the November 2004 state court action. (Ex. E to Devine Aff.) In

11

September 2005, the state court dismissed this second cause of action. (Ex. G to Devine Aff.) In November 2004, Plaintiffs along with Tamar Avni, filed another lawsuit in the New York State Court of Claims, alleging similar claims based upon the same facts. (Ex. A to Singleton Decl.) This action is still pending in the state courts.

Rooker-Feldman bars the Plaintiffs from bringing this action. Plaintiffs lost in the state court actions, and now they bring this action in this Court, alleging the same claims based on the same set of facts. Plaintiffs cannot re-cast their claims as civil rights violations and hope to avoid the application of the Rooker-Feldman doctrine. See Brooks-Jones v. Jones, 916 F. Supp. 280, 281 (S.D.N.Y. 1996) (citations omitted). Accordingly, the Rooker-Feldman doctrine mandates this Court dismiss this action.

III. A Prior Judgment Collaterally Estops Plaintiffs From Bringing This Action.

The Defendants also argue that a state court already determined Plaintiffs were not the victims of medical conspiracy or fraud. Because of this prior state court judgment, the Defendants invoke the doctrine of collateral estoppel or issue preclusion. This Court agrees that the doctrine bars Plaintiffs from re-litigating their claims in this Court.

The doctrine of collateral estoppel is properly invoked when a valid and final judgment has already determined a specific issue of law or fact. "Federal courts must give the same

12

preclusive effect to a New York court's judgment that [state] courts would give it." Wolff v. City of N.Y. Fin. Servs. Agency, 939 F. Supp. 258, 264-65 (S.D.N.Y. 1996) (citing Migra v. Warren City Sch. Dist., 465 U.S. 75, 83, 104 S. Ct. 892, 79 L. Ed. 2d 56 (1984)). New York courts apply the doctrine when (1) an issue was "necessarily decided in the prior proceeding and is decisive in the present action, and (2) the party against whom the estoppel is raised had a full and fair opportunity to litigate the issue in the prior proceeding." Wolff, 939 F. Supp. at 264-65 (citing Murphy v. Gallagher, 761 F.2d 878, 881 (2d Cir. 1985) (citations omitted).

In this case, a state court already determined that the Plaintiffs did not prove that Lior's retention at PPC "was in any way tainted by fraud, concealment of records, conspiracy among physicians, medical malpractice, breach of contract or any other irregularities with respect to Lior's confinement." Avni v. Pilgrim Psychiatric Ctr., No. 8049/05 (N.Y. S. Ct. Sept. 9, 2005) (order dismissing action). Furthermore, Plaintiffs had a full and fair opportunity to litigate these issues in the state court proceedings. They took that opportunity and lost. Accordingly, collateral estoppel bars Plaintiffs from bringing these actions in federal court.

Also, because the state court found that no fraud, conspiracy, or other irregularities existed as to Lior's confinement, the best that Plaintiffs can allege is the Defendants

negligent diagnosis of Lior resulted in his confinement at PPC. Negligence, however, is simply not enough to sustain a section 1983 action. See Pickering v. Provost, 1992 U.S. Dist. LEXIS 3120, at *7-*8 (W.D.N.Y. Feb. 26, 1992) (dismissing a 1983 claim against physicians based on similar allegations that plaintiff was confined at psychiatric center based on false medical documents).

Accordingly, the Court dismisses with prejudice Plaintiffs' claims because the collateral estoppel doctrine precludes Plaintiffs from bringing these duplicative claims. The Court need not address Defendants' remaining arguments in light of the fact that the Court has no subject matter jurisdiction over Plaintiffs' claims and such claims are wholly without merit.

## CONCLUSION

The Court GRANTS Defendants' motions to dismiss. The Court dismisses with prejudice Plaintiffs' Complaint against all Defendants. The Clerk of the Court is ordered to mark this matter as CLOSED. This Order renders any pending motions moot.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: Central Islip, New York
August 28, 2006

14